**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**


Civil Action No. 18-cv-00496-CMA-NRN

KELSI BOWERS,

     Plaintiff,

v.

BUCKEYE STATE MUTUAL INSURANCE COMPANY,

     Defendant.

_____

**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT**
_____

     This matter is before the Court on Plaintiff Kelsi Bowers' Motion for Declaratory

Judgment (Doc. # 23) and Defendant Buckeye State Mutual Insurance Company's

Cross-Motion for Summary Judgment or, Alternatively, Motion for Determination of Law

(Doc. # 24). Both Motions have been fully briefed. (Doc. ## 31, 33, 37, 46.) The Court

exercises jurisdiction pursuant to 28 U.S.C. 1332 (diversity of citizenship). For the

reasons that follow, the Court grants Defendant's Motion and denies Plaintiff's Motion.

## I.  BACKGROUND

     On February 9, 2016, Plaintiff was driving in Northglenn, Colorado when she was

involved in a collision with another driver. (Doc. # 23 at 2.) As a result of the collision,

Plaintiff sustained serious injuries which required extensive medical care. (*Id.*) Police at

the scene determined that the other driver, Joseph Boocker, was at fault and issued him a citation for careless driving. (*Id.* at 3.)

At the time of the collision, Plaintiff was driving a 2010 Chevy Impala ("the Impala"). (*Id.* at 4.) The Impala was covered by an automobile insurance policy ("the Policy") that Defendant issued to Danny Bowers, Plaintiff's Father, who is a resident of Kansas. (Doc. # 31 at 10.) The Policy had an effective term of April 13, 2015, through April 13, 2016, which included the date of the collision. (*Id.*) The Policy indicated that the "Drivers Covered" were Danny and Janelle Bowers. (Doc. # 24-9 at 3.) **Plaintiff was not a named insured driver under the Policy at the time of the 2016 accident. (Doc. # 24-8 at 1–14.)** On August 3, 2016, Defendant paid Plaintiff $4,500 in Personal Injury Protection benefits in accordance with Defendant's obligations under the Policy. (Doc. # 23 at 6–7; Doc. # 24-1 at 2.)

The Policy additionally includes Uninsured Motorist ("UIM") coverage with a policy limit of $100,000 per person. (Doc. # 21-4 at 25; Doc. # 21-16 at 1.) Under the terms of the UIM provision, an "Insured" is defined as, among other things, an individual occupying a vehicle covered by the Policy, such as the Impala Plaintiff was driving at the time of the February 2016 collision. (*Id.*) Further, the Policy defines an "underinsured motor vehicle" as a vehicle "to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage." (*Id.*) In effect, the Policy's UIM provision applies where an insured receives less than $100,000 from another driver's insurance company. In

such a case, the insured can use the Policy's UIM coverage to supplement the compensation from the other driver.

The driver at fault for the February 2016 collision, Mr. Boocker, was insured through Allstate Fire and Casualty Insurance Company ("Allstate"). (Doc. # 21-10 at 3.) In the fall of 2016, Allstate tendered Mr. Boocker's insurance policy limits of $100,000 to Plaintiff in full and final settlement of Mr. Boocker's liability to Plaintiff. (Doc. # 23 at 7.) However, the funds Plaintiff received from Allstate were insufficient to cover the medical costs of her collision-related injuries. (*Id.* at 10.) As a result, Plaintiff informed Defendant that she intended to pursue a claim for UIM benefits. On October 19, 2016, Defendant informed Plaintiff that, based on the terms of the Policy and Kansas law, Plaintiff was not eligible for UIM benefits. Specifically, Defendant indicated that "because the $100,000 per-person limit of [the Policy's] UM/UIM coverage does not exceed the $100,000 per-person limit of the [Allstate] policy, there is no available UIM coverage." (Doc. # 21-6 at 2.)

Defendant's decision that Plaintiff was not entitled to UIM benefits under the Policy gave rise to the instant action. On June 28, 2018, Plaintiff filed a Motion for Declaratory Judgment seeking a determination from this Court that Colorado law controls the interpretation of the Policy's UIM provision and that under Colorado law, Defendant is obligated to pay Plaintiff UIM benefits. (Doc. # 23.) Subsequently, on July 2, 2018, Defendant filed a Cross-Motion for Summary Judgment, or Alternatively, Motion for Determination of Law seeking a determination from this Court that Kansas

law applies and that under Kansas law and the terms of the Policy, Defendant is not required to provide UIM benefits to Plaintiff. (Doc. # 24.)

## II. <u>DECLARATORY JUDGMENT AND SUMMARY JUDGMENT STANDARDS</u>

Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, the Court may enter a judgment declaring "the rights and other legal relations of any interested party seeking such declaration. . . ." 28 U.S.C. § 2201. Such a judgment or decree is reviewable as a final judgment. *Id*. In the instant case, the parties do not dispute that the issues can be resolved as a matter of law through a declaratory judgment.

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 118 F.3d 837, 839 (10th Cir. 1997).

When reviewing motions for summary judgment, a court may not resolve issues of credibility, and must view the evidence in the light most favorable to the nonmoving party—including all reasonable inferences from that evidence. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## III. <u>ANALYSIS</u>

When more than one state's law may be applicable to a claim or issue, a court need not choose which body of law to apply unless there is an outcome determinative conflict between the potentially applicable bodies of law. *Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 861 F. Supp. 2d 1256, 1264 (D. Colo. 2012) (citations omitted). In the instant case, it is undisputed that an outcome determinative conflict exists between Colorado and Kansas law with regard to the principles governing underinsured motorist provisions in insurance policies. Plaintiff argues Colorado law applies. Defendant, on the other hand, argues that Kansas law applies.

### A.  GOVERNING CONFLICT OF LAW RULES

Where, as here, a federal court is sitting in diversity jurisdiction, the conflict of law rules of the forum state apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941); *Sec. Serv. Fed. Credit Union*, 861 F. Supp. 2d at 1267. Colorado has adopted the "most significant relationship" approach set forth in the Restatement (Second) of Conflicts of Law ("the Restatement"). *Wood Bros. Homes v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (contract claims); *First Nat'l Bank v. Rostek*, 514 p.2d 314, 320 (Colo. 1973) (tort claims). Under the most significant relationship approach, the specific Restatement rule applied to a given conflict of law dispute depends on the nature of the underlying substantive claim.

In the instant case, the parties dispute whether Plaintiff has asserted a tort claim, a contract claim, or both. Plaintiff raises two claims for relief: (1) declaratory relief that Colorado law controls in this case; and (2) declaratory relief that Colorado law does not

relieve Defendant of its obligation to provide Plaintiff with the "coverage for which she contracted." (Doc. # 4 at 5–6.) Plaintiff argues that "tort conflict-of-law principles apply here because the crux of Plaintiff's claim against Defendant is that [Defendant] acted in bad faith when handling her claim" and a bad faith breach of contract cause of action sounds in tort.[1] (Doc. # 37 at 3); *see Travelers Prop. Cas. Co. of Am. v. Stresscon Corp.*, 2016 CO 22M, ¶ 16 (noting it is "well-settled" that "an insurer's bad faith breach [of contract] . . . gives rise to tort liability.").

However, the substantive allegations of the Complaint do not raise an implication that Defendant breached its contractual obligations in bad faith. The Colorado Supreme Court has held that the relevant inquiry as to whether an insurer has breached its duties of good faith and fair dealing with its insured is whether "the facts pleaded show the absence of any reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances." *Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984) (citations omitted). Plaintiff's Complaint, by contrast, alleges not that there was an absence of any reasonable basis for denying Plaintiff's claim but that Defendant's cited reasoning behind its decision is "mistaken." (Doc. # 4 at 5.) Therefore, despite Plaintiff's

---

[1] The Court rejects Plaintiff's alternative argument that tort principles control because the incident underlying Plaintiff's insurance claim was a tort which occurred in Colorado. (Doc. # 37 at 1–2.) This dispute concerns the rights and liabilities of the parties according to the Policy. Under Colorado law, courts "construe insurance policies according to principles of contract interpretation." *MarkWest Energy Partners, L.P. v. Zurich Am. Ins. Co.*, 2016 COA 110, ¶ 13 (citing *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 214 P.3d 489, 492 (Colo. App. 2008), *aff'd*, 246 P.3d 651 (Colo. 2011)); *see also Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1312–1313 (10th Cir. 2014) (noting the "apparently uniform practice of those courts following the Restatement to apply contract conflict-of-laws principles to claims for benefits under automobile-insurance contracts.").

assertions to the contrary, there are no grounds to consider what law would apply to a tortious bad faith breach of contract claim because Plaintiff's allegations do not support such a claim.

Even interpreted in the light most favorable to Plaintiff, at best Plaintiff states only claims based on breach of contract. As such, the Court agrees with Defendant that "the crux of this case is whether benefits are available under the insurance policy under either Kansas law or Colorado law." (Doc. # 46 at 12.)

## B.    APPLICATION OF SECOND RESTATEMENT PRINCIPLES

The Restatement provides the following with regard to insurance contracts in particular:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement § 193; *Mitchell v. State Farm Fire & Cas. Co.*, 902 F.2d 793 (10th Cir. 1990) (noting that under the "most significant relationship" test, "the law of the state in which the insured property, object or other risk is located normally governs issues concerning the validity or effect of the insurance contract.") (citations omitted). The insured risk, which is "the object or activity which is the subject matter of the insurance, has its principal location . . . in the state where it will be during at least the major portion of the insurance period." Restatement § 193 cmt. (b). The Restatement further explains that "in the case of an automobile liability policy, the parties will usually know

beforehand where the automobile will be garaged at least during most of the period in question." *Id.* More specifically,

> The [insurance] policy will usually be solicited in the state of the insured's domicile and usually the insured risk will also be located there. In the normal case, therefore, the policy will have been solicited and delivered and the last act necessary to make the contract binding will have taken place in the state where the insured is domiciled or incorporated, and where the risk is located. This state, in such a situation, will usually be the state of the applicable law, at least with respect to most issues.

*Id.* Finally, the Restatement indicates that if the insured risk "will be in a particular state for the major portion of the insurance period, the risk's principal location is the most important contact to be considered in the choice of the applicable law . . ." because that location "has an intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend." *Id.* at (b-c).

However, as a caveat, § 193 indicates that circumstances may exist in which "following the issuance of the policy the principal location of the risk is shifted to some other state" in which case "this other state will have a natural interest in the insurance of the risk and it may be that its local law should be applied to determine at least some issues arising under the policy." *Id.* at cmt. (d). The stated rationale for the exception from the standard practice involving insurance contracts is that "application of the local law of the other state would hardly be unfair to the insurance company . . . if the company had reason to foresee when it issued the policy that there might be a shift to another state of the principal location of the risk." *Id.* However, the exception is limited in its application.

Courts have held that the principal location of an insured risk shifts when: (1) both the insured and the insured risk are located in a different forum than the one in which the contract was formed for the majority of the contract term; (2) the underlying contract is silent as to what law applies; and (3) the insurer had knowledge that the insured risk had shifted to another location. *See Clay v. Sun Ins. Office, Ltd.*, 377 U.S. 179, 182 (1964) (finding Florida law applied to contract formed in Illinois when the "contract did not even attempt" to clarify what law applied and "[s]hortly after the contract was made, [the insured] moved to Florida and there he lived for several years . . . [h]is property was there all that time . . . [and] the [insurer] knew this fact.").

The factual circumstances of the instant case show that the exception to § 193 is inapplicable and the principal location of the insured risk did not shift.

1.  <u>Location of Insured Risk During the Contract Term</u>

The "principal location" of an insured risk is defined by § 193 Comment (b) as "the state where [the insured risk] will be during at least the major portion of the insurance period." Comment (b) notes that "the significance of the state of the risk's principal location diminishes with the length of time that it can be anticipated the chattel will be in other states during the term of the insurance." However, Comment (b) further provides that if "the risk will be in a particular state for the major portion of the insurance period, the risk's principal location is the most important contact to be considered in the choice of the applicable law. . . ."

Based on the facts of this case, the principal location of the Impala was in Kansas. Janelle Bowers, Plaintiff's mother, completed a "Kansas Personal Auto

Application" on April 11, 2002, in St. Francis, Kansas, which indicated that the co-applicants—Danny and Janelle Bowers—resided and were employed in Kansas. (Doc. # 24-4.) Plaintiff, Kelsey Bowers, was listed as a driver with a Kansas driver's license, but she was subsequently dropped from the Policy. (*Id.*) The Impala involved in the 2016 accident was added to the Policy as Vehicle # 9 in 2011, and the Endorsement Declaration—which added the Impala to the Policy—reflects that the Impala was located in Kansas. (Doc. # 24-7 at 1.)

In 2015, Defendant issued and delivered a renewal of the Policy to Danny Bowers as the named insured with a term covering April 13, 2015, to April 13, 2016. (Doc. # 24-9.) The drivers covered under the Policy were Danny and Janelle Bowers. (*Id.* at 3.) When the Policy was renewed, it reflected that Mr. Bowers continued to reside in Kansas. (*Id.* at 2.) Additionally, the renewed Policy reflected that the Impala continued to be located in Kansas. (*Id.*)

Therefore, the Policy was solicited and delivered in Kansas, which is also the state of the insured's residence and place of employment. Moreover, the contract became binding in the same state in which both the insured resided and where the insured risk—the Impala—was located. In such a case, § 193 Comment (b) provides that Kansas would "usually be the state of the applicable law. . . ."

Additionally, Courts have held that if all named insureds reside in—and the insured automobile is located in—a particular state when an insurance policy is issued, there is sufficient evidence to conclude that the parties understood that state to be the principal location of the insured automobile. *See Ackerman v. Foster*, 974 P.2d 1, 3

(Colo. App. 1998) (applying California law where daughter, who was not a named insured under California resident father's policy, relocated from California to Colorado and was then involved in a collision while driving father's car).

In the instant case, the named insured resided in Kansas and the insured vehicle was also located in Kansas when the Policy was renewed. Accordingly, the parties understood Kansas to be the principal location of the Impala at the time of the Policy renewal. *See id.* at 3.

Plaintiff, however, argues that the location of the Impala shifted to Colorado when Plaintiff relocated to Colorado and brought the impala with her on December 26, 2015. (Doc. # 23 at 21–22, # 21-2 at 2.) The Court finds this argument to be somewhat of a red herring because Plaintiff was not a covered driver under the Policy. Nonetheless, in the interests of thoroughness, the Court will address this argument because § 193 Comment (b) provides that if "the risk will be in a particular state for the major portion of the insurance period, the risk's principal location is the most important contact to be considered in the choice of the applicable law. . . ."

The parties did not submit any evidence which suggests that the Impala was located anywhere other than Kansas until Plaintiff relocated to Colorado. Therefore, the Court finds that the Impala was located in Kansas from the inception of the Policy term on April 13, 2015, until Plaintiff became a resident of Colorado on December 26, 2015.

Accordingly, the Impala was located in Kansas for 257 days of the one-year Policy, which is 70 percent of the Policy's term. Because Kansas was the state in which the named insured resided—and the state in which the Impala was located both at the

inception of the policy and for the significant majority of the policy term—the principal location of the Impala was in Kansas.

      2.    <u>Contractual Indications of Which State's Law Applies</u>

The renewed Policy covering April 13, 2015, to April 13, 2016, did not include a provision explicitly indicating which state's law would govern the terms of the contract. However, the Policy did include the following endorsements:

- Amendment of Policy Provisions – Kansas (Doc. # 24-9 at 6);

- Personal Injury Protection Coverage – Kansas (*Id.* at 12);

- Uninsured Motorists Coverage – Kansas (*Id.* at 33).

Notably, the endorsement related to the provision at issue—the underinsured motorists provision—is modeled after the related Kansas statute. The Policy indicates:

> 'Underinsured motor vehicle' means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident *but its limit for bodily injury liability is less than the limit of liability for this coverage.*

(Doc. # 21-4 at 32) (emphasis added). Similarly, the Kansas statute related to underinsured motorist coverage requires such coverage to enable an insured to recover from the insurer:

> the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage *to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.*

Kan. Stat. Ann. § 40-284(b) (emphasis added).

Therefore, the Policy is modeled after the Kansas statute in that both allow an insured to recover UIM benefits only if the UIM coverage exceeds the amount the insured can recover from the other driver. Thus, although the Policy does not explicitly indicate that it is intended to be governed by Kansas law, the title of relevant provision indicates that it is related to Kansas in particular, and the substance of the provision applies the Kansas statutory standard for UIM coverage. Accordingly, the Policy does particularize the standard governing the underinsured motorist provision to a specific state.

3.    <u>Insurer's Knowledge of a Change in the Location of the Risk</u>

Plaintiff was not a named insured driver under the Policy from March 5, 2013, through the date of the 2016 collision. (Doc. # 24-8 at 1–14.) Additionally, it is undisputed that neither Plaintiff nor her parents disclosed to Defendant that the Impala would be relocated to Colorado. Therefore, Defendant had no knowledge that the Impala had moved from its principal location.

In sum, the exception to § 193 that recognizes a shift in the principal location of the insured risk is inapplicable. The parties to the insurance contract understood Kansas to be the principal location of the Impala because that was the location of both the insured's residence and the insured risk at the time the Policy was executed. Additionally, the Impala remained in Kansas for the significant majority of the Policy's term. Moreover, the Policy's uninsured motorist provision is particularized to Kansas and it is modeled after the Kansas uninsured motorist statute. Finally, Defendant had no knowledge that the location of the Impala had changed.

Because the exception to § 193 is inapplicable, the § 193 default standard applies. Under the default standard, insurance contracts are governed by "the local law of the state which the parties understood [to be] the principal location of the insured risk during the term of the policy." The Court has already determined that the parties understood Kansas to be the principal location of the Impala because the named insured, Mr. Bowers, resided in Kansas and the Impala was located in Kansas when the insurance contract was renewed. *See supra* Section B(1). Therefore, under § 193, Kansas law controls the instant dispute.

## C.  PLAINTIFF'S ALTERNATIVE ARGUMENTS

Plaintiff advances two arguments in the event that the Court determines that Kansas is the principal location of the insured risk. Specifically, Plaintiff argues (1) even if Kansas is the principal location of the Impala, Colorado still has a more significant relationship to the transaction and the parties; and (2) enforcing Kansas law with respect to the Policy's underinsured motorist provision will violate Colorado public policy. The Court will address each argument in turn.

### 1.  Whether Colorado has a More Significant Relationship than Kansas

Plaintiff asserts that even if Kansas is the principal location of the insured risk, application of the factors set forth in § 6 of the Restatement demonstrates that Colorado has a more significant relationship to the transaction and the parties. (Doc. # 33 at 9.) Courts have held that § 193 of the Restatement—which relates specifically to insurance contracts—creates a "presumption [that] is not conclusive" and if "another state has a more significant relationship, then the law of that state will be applied." *St. Paul Fire and*

*Marine Ins. Co. v. Alstom Power, Ins. Co.*, 08-cv-02139-LTB-KLM, 2009 WL 1066067,

at *3 (D. Colo. 2009) (quoting *Wood Bros.*, 601 P.2d at 1373). In order to determine

whether a state has a more significant relationship than the state whose law would

apply under § 193, courts apply §§ 188 and 6 of the Restatement. *Id.* According to § 6,

the factors relevant to the choice of the applicable law in the absence of a statutory

directive include:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those
>     states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f)  certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Additionally, § 188 provides that in the absence of an effective choice of law by the

parties, the contacts relevant to application of the principles of § 6 to issues involving

contracts include:

> (a) the place of contracting
> (b) the place of negotiation of the contract
> (c) the place of performance
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business
>     of the parties.

Plaintiff concedes that with respect to the § 188 factors, the place of contracting and the

place of negotiation of the contract weigh in favor of applying Kansas law. (Doc. # 33 at

11.) However, Plaintiff argues that the remaining factors weigh in favor of applying

Colorado law. (*Id.*)

With regard to the state policies at issue, Plaintiff argues that a conflict between Kansas and Colorado law indicates that Colorado has the strongest interest in having its law applied.

Colorado and Kansas have different policies involving underinsured motorist benefits. The Colorado statute provides that underinsured motorist coverage:

> shall be in addition to any legal liability coverage and shall cover the difference, if any, between the amounts of the limits of any legal liability coverage and the amount of the damages sustained . . . up to the maximum amount of the coverage obtained pursuant to this section . . . [t]he amount of coverage available pursuant to this section shall not be reduced by a setoff from any other coverage, including, but not limited to, legal liability insurance, medical payments coverage, health insurance, or other uninsured or underinsured motor vehicle insurance.

C.R.S. § 10-4-609(c)(1). Thus, Colorado employs an approach which allows insureds to "stack" insurance policies, which is to say the second policy begins where the first policy's coverage ends without reducing the amount of available recovery under the second policy. *Jordan v. Safeco Ins. Co. of Am., Inc.*, 2013 COA 47, ¶ 38.

Kansas, by contrast, employs an "anti-stacking" approach according to which an insured may recover from an insurer:

> the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator from another motor vehicle *with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.*

Kan. Stat. Ann. § 40-284(b) (emphasis added). Thus, unlike Colorado's approach, an insured's insurance award is reduced by, rather than supplemented by, compensation the insured receives from the owner or operator of the other vehicle.

Both states share a common intent to ensure that individuals receive fair compensation when an underinsured motorist causes them damage. However, Kansas and Colorado differ with regard to what each state considers to be "fair." Colorado focuses on maximizing the amount an insured can recover whereas Kansas favors a more limited approach. Although Colorado has an interest in its residents being compensated according to its determination of what is appropriate when an individual is involved in a collision with an underinsured motorist, Kansas has an interest in ensuring that insurance policies subject to its laws are honored by other states. Thus, both Colorado and Kansas have strong interests implicated in the application of their underinsured motorist statutes. However, when viewed in light of the other relevant factors under the Restatement, Kansas has a stronger interest than Colorado.

Contrary to Plaintiff's argument, the remaining Restatement factors do not weigh in favor of applying Colorado law. The Restatement indicates that the § 188 factors are to be considered in light of § 6. With respect to the place of performance, Plaintiff argues that because Defendant has performed by paying Personal Injury Protection benefits to her and because she is a resident of Colorado, Colorado law should apply. (Doc. # 33 at 11.) However, Plaintiff's theory conflicts with the protection of Defendant's justified expectations. The extension of Plaintiff's reasoning would lead to the conclusion that the law of the state in which a collision occurs would always be applied if an insurer makes a payment to an individual who resides in that state even if that person had not been a party to the underlying insurance contract.

Such a scenario would conflict with Defendant's justified expectations because the Policy's underinsured motorist provision is modeled after the laws of one state in particular, and it is unlikely that Defendant reasonably expected to be subject to the laws in every state in which an accident might take place, especially when some state laws might impact the enforceability of the Policy. Protection of "parties' expectations is a central policy underlying the law of contracts." *Kipling v. State Farm Mut. Auto. Ins. Co.*, 159 F. Supp. 3d 1254, 1272 (D. Colo. 2016) (quoting *Pirkey v. Hosp. Corp. of Am.*, 483 F. Supp. 770, 773 (D. Colo. 1980)). In fact, § 188 Comment (b) explains that parties to a contract should not have their expectations "disappointed by application of the local law rule of a state which would strike down the contract or a provision thereof unless the value of protecting the expectations of the parties is *substantially outweighed* in the particular case by the interest of the state with the invalidating rule in having this rule applied." Restatement § 188 cmt. (b) (emphasis added).

Further, "since Plaintiff was not a party to the contract, she would not have any expectations as to that contract." *Brown v. Fryer*, No. 12-cv-01740-CMA-KMT, 2013 WL 1191405, at *3 (D. Colo. 2013) (noting that "allowing Plaintiff to sue for benefits under the policy without holding her to its limitations would create a windfall for her and would undermine the intent of the parties who agreed to the contract's terms."). Moreover, because the insured and the insured risk were both located in Kansas for the majority of the contract term, Defendant and the named insured performed the majority of their respective duties under the Policy in Kansas rather than Colorado, which increases Kansas' interest in having its law applied.

Similarly, the location of the subject matter of the contract does not favor the application of Colorado law. At the inception of the Policy term, the named insureds represented that the insured risk was located in Kansas, and Defendant relied on that representation when it agreed to issue the Policy because the "principal garaging address" of an automobile is material to Defendant's calculation of the state specific premiums associated with a given policy. *See supra* Section B(1); (Doc. # 24-1 at 2; Doc. # 24-17 at 1–2). As previously stated, the insured risk remained in Kansas for the majority of the Policy term and Defendant did not have notice that the insured risk had been relocated to another state. *See supra* Section B(1).

In such a case, applying Colorado law would violate Defendant's justified expectations and it would undermine the predictability of insurance contracts. Specifically, it is unlikely that Defendant expected to be subject to Colorado law because it entered into the Policy with Kansas residents and the subject matter of the contract was located in Kansas. In fact, § 188 Comment (e) explains that where, as here, "the thing or the risk is the principal subject of the contract, it can often be assumed that the parties . . . would expect that the local law of the state where the thing or risk was located would be applied to determine many of the issues arising under the contract." Restatement § 188 cmt. (e). Moreover, Defendant's expectations are bolstered by the fact that "[i]nsurance policies generally are interpreted under the law of the state where the policy was issued." *Kipling*, 159 F. Supp. 3d at 1272 (quoting *TPLC, Inc. v. United Nat. Ins. Co.*, 44 F.3d 1484, 1491 n.8 (10th Cir. 1995)). Additionally, applying Colorado law would undermine the predictability of performance of insurance

contracts because both insureds and insurers would be uncertain which state's law would ultimately govern their agreement in the absence of an explicit choice of law provision because the applicable law would be based on where the insured risk ultimately appears rather than the mutually understood location of the insured risk at the inception of the agreement.

Moreover, the domicile and residence of the parties does not favor the application of Colorado law. Plaintiff argues that her status as a Colorado resident favors the application of Colorado law. (Doc. # 33 at 11.) However, § 188 considers the domicile and residence of the parties to the contract rather than the residence and domicile of parties to a particular dispute. *See* Restatement § 188 cmt. (b). In the instant case, it is undisputed that the named insured, who was a party to the insurance contract with Defendant, resided and was employed in Kansas. *See supra* Section B(1). Because § 188 Comment (e) notes that the domicile of the insured is "a contact of particular importance" with regard to insurance related contracts, Kansas has a substantial interest in having its law applied. Restatement § 188 cmt. (e).

Therefore, although Colorado and Kansas both have strong interests in having their law applied, Kansas' interest is stronger. Application of Kansas law best protects the expectations of the parties to the underlying insurance contract. Kansas was the state in which the contract was executed. The subject matter of the contract was understood by the parties to be principally located in Kansas, Defendant relied on that information when it entered into the contract, and the named insured was a Kansas resident. Thus, disappointing the expectations of the parties by applying local law—

which would invalidate a provision of the parties' agreement—is not "substantially outweighed" by Colorado's interest in having its statutory compensation structure applied. *See* Restatement § 188 cmt. (b). Accordingly, the principles set forth by §§ 188 and 6 of the Restatement establish that Kansas has the most substantial interest in having its law applied.

### 2. <u>Whether Enforcing Kansas Law Will Violate Colorado Public Policy</u>

Plaintiff also argues that "applying Kansas law violates the fundamental law and policy" created by Colorado's underinsured motorist statute. (Doc. # 37 at 6.) Specifically, Plaintiff argues that the Policy's UIM provision "impermissibly dilute[s]" the coverage mandated by Colorado law and the terms "contravene[ ] the General Assembly's clear intention to provide injured insureds . . . with [UIM] coverage." (Doc. # 23 at 27.) Plaintiff appears to be arguing that even if Kansas has the strongest interest in having its law applied, the Court should still decline to apply Kansas law.

Where, as here, a forum's conflict of laws rules refer to the law of another jurisdiction, courts will not apply the foreign law if it is contrary to the strong public policy of the forum. *Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1223 (10th Cir. 1991); *See* Restatement § 90. However, the rule has a "narrow scope" and "[a] mere difference between the local law rules of the two states will not render the enforcement of a claim created in one state contrary to the public policy of the other." Restatement § 90 cmt. (a–b). For instance, state laws involving usury, prostitution, and slavery were examples of public policies that would, according to Justice Cardozo, "violate some fundamental principle of justice, some prevalent conception of morals, some deep-seated tradition of

the commonweal." *Loucks v. Standard Oil Co. of New York*, 120 N.E. 198, 202 (N.Y. 1918) ("mere differences of remedy do not count."); *see, e.g.*, *Greenwood v. Curtis*, 6 Mass. (1 Tyng) 358, 378 (1810) (slavery). Thus, because "every law is an expression of the public policy of the state, some higher threshold is needed to prevent the forum's law from being applied in every case." *Tucker*, 956 F.2d at 218.

However, "it is unclear that it is fundamental policy of Colorado to apply § 10–4–609(1)(a) to insurance policies," such as the one at issue, "written or delivered outside of Colorado." *Kipling*, 159 F. Supp. at 1274 (citing *Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099, 1105 (Colo. 2011) (noting that the Colorado underinsured motorist statute "applies only to liability insurance policies issued or delivered in Colorado. . . . ")). Therefore, applying Kansas law to the instant case does not clearly "violate some fundamental principle of justice, some prevalent conception of morals, [or] some deep-seated tradition of the commonweal." *Loucks*, 120 N.E. at 202. As a result, the Court will apply Kansas law because it has the most significant relationship as defined by the Restatement. *See supra* Sections B, C(1).

## D.     RIGHTS OF THE PARTIES ACCORDING TO KANSAS LAW

The underinsured motorist provision in the Policy indicates:

'Underinsured motor vehicle' means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

(Doc. # 21-4 at 32.) The parties do not dispute that the provision is enforceable under Kansas law. (Doc. # 31 at 30.) Therefore, as Plaintiff notes, underinsured motorist benefits are "only available if the limits of the insured's [UIM coverage] exceed the limits

of the bodily injury coverage carried by the owner or operator of the 'underinsured motor vehicle.'" (Doc. # 23 at 27.)

The operator of the vehicle with which Plaintiff was involved in a collision had an insurance policy with $100,000 per person limits. (Doc. # 31 at 6.) The Policy provides limits of $100,000 per person in UIM coverage. (*Id.*) Therefore, the other driver's policy is not less than the limit of the Policy's UIM coverage. As a result, Plaintiff is not entitled to underinsured motorist benefits.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED that Defendant Buckeye State Mutual Insurance Company's Cross-Motion for Summary Judgment or, Alternatively, Motion for Determination of Law (Doc. # 24) is GRANTED. It is

FURTHER ORDERED that Plaintiff Kelsi Bower's Motion for Declaratory Judgment (Doc. # 23) is DENIED.

The Clerk of the Court is respectfully directed to ENTER JUDGMENT in favor of Defendant Buckeye State Mutual Insurance Company and against Plaintiff Kelsi Bowers.

DATED: January 9, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge